FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2013 JAN 23 AM 12: 46

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MICHAEL J. KISTLER and HUTCH )
HOLDINGS, INC., )
)
    Plaintiffs and Counter )
    Defendants, )
)
v. )   CASE NO. CV411-024
)
FEDERAL DEPOSIT INSURANCE )
CORPORATION, as Receiver for )
First National Bank, )
)
    Defendant and )
    Counterclaimant. )
_____ )

## O R D E R

Before the Court is Defendant and Counterclaimant
Federal Deposit Insurance Corporation's, as Receiver for
First National Bank ("FDIC-R"), Motion for Summary
Judgment. (Doc. 32.) FDIC-R seeks judgment as a matter of
law as to the indebtedness owed by Plaintiffs Michael J.
Kistler ("Kistler") and Hutch Holdings, Inc. ("Hutch
Holdings") and also summary judgment on all claims alleged
against it by Plaintiffs. (Doc. 32 at 1-2.) For the
reasons outlined below, FDIC-R's motion is **GRANTED**.
Plaintiffs' claims against Defendant FDIC-R are **DISMISSED**
and Counterclaimant FDIC is entitled to judgment as a
matter of law. The Clerk of Court is **DIRECTED** to enter
judgment in favor of Counterclaimant FDIC-R and against

Counter Defendant Kistler individually in the amount of $785,200.25[1] and against Counter Defendants Kistler and Hutch Holdings jointly and severally in the amount of $1,767,226.31.[2]   Additionally, the Clerk of Court is **DIRECTED** to close both this and the consolidated case, CV411-25.

## BACKGROUND

The following undisputed facts form the basis of this action.   On December 31, 2007, Kistler obtained a line of credit ("Kistler LOC") from First National Bank ("FNB") in the principal sum of $1,500,000.00.[3]   (Doc. 33 ¶ 1.)   The same day, Kistler, as president of Hutch Holdings, entered into a commercial security agreement[4] ("Security Agreement") with FNB.   (Id. ¶ 5.)   The Security Agreement granted FNB a deed to secure debt with real property, and an assignment

---

[1] This includes $476,449.20 in principal, $232,221.24 in interest, $3,875.24 in late fees, $1,250.00 in loan fees, and $71,404.57 in attorney's fees.

[2] This includes $1,000,000.00 in principal, $532,087.98 in interest, $3,880.55 in late fees, $750.00 in loan fees, and $230,507.78 in attorney's fees.

[3] The Court construes the facts in the light most favorable to the nonmoving party—Kistler and Hutch Holdings.   See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 577-78 (1986).

[4] The Security Agreement provides that it secures "[a]ll present and future debts, even if this Agreement is not referenced, the debts are also secured by other collateral, or the future debt is unrelated or of a different type than the current debt."   (Doc. 33 ¶ 6.)   The Security Agreement secured payment with real property at 360 Bay Street in Augusta, Georgia.   (Id. ¶¶ 7, 8.)

2

of leases and rents. (Id. ¶ 2.) Kistler also executed an absolute, unconditional, and continuing personal guaranty of a promissory note to FNB from Cobalt Partners, LLC in the principal sum of $1,000,000.00 ("Cobalt Note"). (Id. ¶¶ 9, 10.) Cobalt Partners, LLC is a South Carolina limited liability company of which Kistler is a member and one of seven guarantors. (Id.)

On January 20, 2009, the Kistler LOC was renewed with a new maturity date of February 2, 2010. (Id. ¶ 11.) The renewed Kistler LOC required any future advance requests to be approved by FNB and also included a cross-default provision providing that Kistler would be in default if he "fails to perform any condition or keep any covenant on this or any debt or agreement [he] has with [FNB]." (Id. ¶¶ 12, 13.) On the same day, Hutch Holdings, through Kistler, executed a second Security Agreement with FNB. (Id. ¶ 14.) The Cobalt Note was also renewed with a maturity date of July 20, 2009. (Id. ¶ 15.)

The Cobalt Note matured in July 2009. Plaintiffs allege that in September 2009, FNB froze the Kistler LOC and "exercise[d] [its] set-off rights by forcing an advance from the [Kistler LOC] in the amount of $1,022,486.12, which [FNB] wrongful [sic] converted by applying it to fully satisfy the [Cobalt Note]." (Doc. 1-2 ¶ 3.)

According to Plaintiffs, they then demanded that FNB return the Kistler LOC monies, which FNB refused. (Doc. 1-2 ¶ 4.)

On September 21, 2009, Kistler sued in the Superior Court of Chatham County ("2009 Complaint"). (Doc. 33 ¶ 25.) The 2009 Complaint sought injunctive relief against FNB to restore the amount involuntarily advanced under the Kistler LOC, tort damages for conversion, breach of contract, and attorney's fees. (Id. ¶ 26.) FNB filed an answer and asserted a counterclaim for the principal debt and accrued interest owing in connection with the defaulted Cobalt Note, plus attorney's fees and costs. (Id. ¶ 27.)

Four months later, Kistler filed an amended complaint. (Id. ¶ 29.) In addition to the original claims in the 2009 Complaint, the amended complaint also alleges that Kistler paid FNB $25,000.00 in exchange for, and in reliance on, FNB's promise to release Kistler from all but $300,000.00 worth of any obligation on the Cobalt Note, as well as to pay Kistler $23,247.82, attorney's fees, and return to the Kistler LOC the total amount advanced to satisfy the Cobalt Note. (Id.) In support of these allegations, Kistler attached an email correspondence from Kistler to FNB's president, Layne Huttenberger. (Id. ¶ 30.) The email suggests that FNB, through Huttenberger, purportedly approved and signed the agreement terms provided by Kistler

4

in the email ("Kistler—Huttenberger Email Agreement"). Kistler's amended complaint further included a punitive damages claim, a breach of contract claim for FNB's failure to abide by the alleged promises of Huttenberger, and claims for fraudulent misrepresentation and fraud in the inducement. (Id. ¶ 31.)

On March 3, 2010, a separate lawsuit by Kistler and Hutch Holdings was filed against FNB in the Superior Court of Chatham County ("2010 Complaint"), seeking damages and an injunction prohibiting FNB from "requesting and/or receiving any monies from Plaintiffs' tenants" and "from contacting Plaintiffs' tenants directly." (Doc. 33 ¶ 34.) The 2010 Complaint alleges that on February 24, 2010, FNB sent a letter to Hutch Holdings' tenants requesting they remit all rent to FNB under the terms of the Security Agreement. (Id. ¶ 35.) Based on this letter, the 2010 Complaint sought tortious interference with Plaintiffs' business and contractual relationships, conversion of rent monies paid to FNB by the tenants, punitive damages, and attorney's fees. (Id. ¶ 36.) FNB filed an answer and asserted a counterclaim for the matured debt under the Kistler LOC, which had matured by its own terms. (Id. ¶ 37.)

As to the 2009 Complaint, the Superior Court of Chatham County, Georgia granted Kistler partial summary judgment, finding that FNB was not entitled to exercise its set-off rights by advancing monies from the Kistler LOC to satisfy the Cobalt Note obligations. (Id. ¶ 38.) The order also found that the Cobalt Note was in default. (Id. ¶ 40.) FNB was ordered to reinstate the status of the Kistler LOC. (Id. ¶ 39.) FNB appealed.

On June 11, 2010, FNB, through its attorneys, made demand on Kistler for payment of all sums due under the Cobalt Note. (Id. ¶ 19.) Soon thereafter, the Office of the Comptroller of the Currency found FNB to be in an unsafe and unsound condition and appointed the FDIC as its Receiver. (Doc. 1 at 1.) On January 28, 2011, the Superior Court of Chatham County, Georgia entered a consent order substituting FDIC-R as the Defendant and Counterclaimant in the place of FNB.[5] (Doc. 33 ¶ 42.) Both suits—the 2009 Complaint and 2010 Complaint—were timely removed pursuant to 28 U.S.C. § 1441(b) and 12 U.S.C. § 1819(b)(2)(B). (Id. ¶ 43.) On March 28, 2012, this Court consolidated the two separate lawsuits. (Id. ¶ 44.)

---

[5] FDIC-R elected to not pursue the appeal and treated the Kistler LOC and Cobalt Note as having been restored to their September 17, 2009 status. (Doc. 34 at 4 n.3.)

FDIC-R then filed a motion for summary judgment. (Doc. 32.) Plaintiffs responded in opposition. (Doc. 36.)

After consolidation of the two cases, the following claims remain: conversion of the funds drawn on the Kistler LOC and credited to the Cobalt Note; conversion of Kistler's $25,000.00 payment to FNB; fraudulent representation or fraud in the inducement by FNB; tortious interference with Hutch Holdings' contractual relations with its tenants; FNB's breach of contract by failing to make funds available to Kistler under the Kister LOC; FNB's breach of contract for failing to reduce Kistler's Cobalt Note guaranty to $300,000; FNB's breach of contract by failing to pay Kistler $23,247.82 and attorney's fees; punitive damages; and attorney's fees.

## ANALYSIS

### I. STANDARD OF REVIEW

According to Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess

7

the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts that are material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. <u>Matsushita</u>, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Id.</u> at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. <u>See, e.g.</u>, <u>Tidwell v. Carter Prods.</u>, 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." <u>Barfield v. Brierton</u>, 883 F.2d 923, 933-34 (11th Cir. 1989).

"In a diversity jurisdiction case, the court applies the substantive law of the state in which the case arose." <u>Azar v. Nat'l City Bank</u>, 382 F. App'x 880, 884 (11th Cir. 2010). Therefore, the choice of law rules of the forum state of Georgia determine what substantive law applies to this dispute. <u>U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.</u>, 550 F.3d 1031, 1033 (11th Cir. 2008). Georgia applies the traditional rule of <u>lex</u> <u>loci</u> <u>contractus</u>. <u>Convergys Corp. v. Keener</u>, 276 Ga. 808, 811, 582 S.E.2d 84, 86 (2003). The parties agree that Georgia law governs this

dispute. Accordingly, the Court will apply Georgia law, where applicable.

## II. FDIC-R'S MOTION FOR SUMMARY JUDGMENT

### A. Claims Barred by the D'Oench Doctrine

FDIC-R argues that the doctrine laid out in D'Oench Duhme v. FDIC, 315 U.S. 447, codified in 12 U.S.C. §§ 1821(d)(9) and 1823(e), precludes Plaintiffs' claims against it because the purported settlement—the Kistler-Huttenberger Email Agreement—was not fully executed and properly documented by FNB. (Doc. 34 at 19.) When the FDIC acts as a receiver, the D'Oench doctrine precludes a private party from enforcing against the FDIC "any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records." Baumann v. Savers Fed. Sav. & Loan Ass'n, 934 F.2d 1506, 1515 (11th Cir. 1991). To effectuate this purpose, the statute provides that

> [n]o agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement

> (A) is in writing,

(B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e). The Eleventh Circuit Court of Appeals has previously determined that, under § 1823(e), a document must be signed to be executed. Twin Const., Inc. v. Boca Raton, Inc., 925 F.2d 378, 384 (11th Cir. 1991). In addition, the party advancing the adverse interest bears the burden of establishing that an agreement satisfies the requirements of § 1823(e). See FDIC v. Oldenburg, 34 F.3d 1529, 1551 (10th Cir. 1994); Hanson v. FDIC, 13 F.3d 1247, 1253 (8th Cir. 1994).

### 1. Breach of Kistler—Huttenberger Email Agreement Claims

In this case, several of Plaintiffs' claims against Defendant FDIC-R are barred by § 1823(e). Plaintiffs have presented no evidence that the supposed Kistler—Huttenberger Email Agreement was either approved by FNB's Board of Directors, id. § 1823(e)(C), or kept as an official record of FNB, id. § 1823(e)(D). As noted above,

11

Plaintiffs bear the burden of establishing the statutory prerequisites contained in 12 U.S.C. § 1823(e). Plaintiffs have failed to do so. As a result, all of Plaintiffs' breach of contract claims arising from the purported agreement between Kistler and Huttenberger are barred by the D'Oench doctrine and must be dismissed.

### 2. Fraudulent Misrepresentation/Fraud in the Inducement Claim

Additionally, Plaintiffs' claim for fraudulent misrepresentation or fraud in the inducement is also barred by the D'Oench doctrine. Plaintiffs argue that these claims are not barred by the D'Oench doctrine because they are free-standing tort claims, citing Vernon v. FDIC, 907 F.2d 1101, 1101 (11th Cir. 1990) ("Vernon I") and Vernon v. FDIC, 981 F.2d 1230, 1233-34 (11th Cir. 1993) ("Vernon II"). (Doc. 36 at 3-4.) In Vernon II, a failed bank sold stock that was found to be unrelated to any loan or other banking transaction. 981 F.2d at 1233. The Eleventh Circuit declined to extend the D'Oench doctrine because it would bar valid tort claims that would not otherwise appear in the books of a failed bank. Id. Moreover, the Court held that "the D'Oench doctrine [does not] operate[] to bar free standing tort claims that are not related to a specific asset acquired by the FDIC." Id. at 1233-34.

12

However, the Eleventh Circuit has since clarified the holding in Vernon II by stating that it "should not be extended to exempt from the D'Oench doctrine claims which relate directly to regular banking transactions and which should be in the records of regular banking transactions." OPS Shopping Cntr. v. FDIC, 992 F.2d 306, 310-11 (11th Cir. 1993).

Here, Plaintiffs' fraud claims are intertwined with the Kistler–Huttenberger Email Agreement. Plaintiffs acknowledge this fact by alleging that Huttenberger, as an agent of FNB, "knowingly and recklessly made substantive and material misrepresentations which induced [Kistler] to enter into the agreement." (Doc. 1-11 ¶ 31.) In response to FDIC-R's motion for summary judgment, Plaintiffs attempt to argue that "there is no relevant agreement" because Huttenberger's actions were "completely independent of the agreement." (Doc. 36 at 3-4.) That argument, while novel, is not what the record and Plaintiffs' own complaint demonstrate. Plaintiffs' claims relate directly to "regular banking transactions" that should be duly recorded in FNB's records as to the Kistler LOC and the Cobalt Note. As a result of the intertwined nature of Plaintiffs' fraud claims to the loan transactions at issue, the D'Oench

doctrine applies and requires dismissal of Plaintiffs' claims.

B.   Remaining Claims

1.   Conversion Claims

Additionally, Plaintiffs' claim that there was a conversion of funds drawn on the Kistler LOC credited to the Cobalt Note and a second conversion as to the $25,000.00 payment made by Kistler to FNB. These claims must also be dismissed.

Under Georgia law, to prove conversion, a plaintiff must show that there was an "unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." Decatur Auto Cntr. v. Wachovia Bank, N.A., 276 Ga. 817, 819, 583 S.E.2d 6, 8 (2003). The Georgia Supreme Court has held that contract rights to the payment of money are not capable of conversion. Id. at 821 n.8, 583 S.E.2d at 9 n.8 ("[A] cause of action for conversion 'does not lie on account of a mere failure to pay money due under a contract.' " (quoting Morris v. Nat. W. Life Ins. Co., 208 Ga. App. 443, 445, 430 S.E.2d 813, 814 (1993))). Further, for a conversion action, the right involved must be

14

"absolute, unconditional, and exist at the time the action is commenced." Gilbert v. Rafael, 181 Ga. App. 460, 460, 352 S.E.2d 641, 641 (1987) (citations omitted).

### a. Conversion of Kistler's $25,000 to FNB

According to Plaintiffs' amended 2010 Complaint, FNB wrongfully converted $25,000.00 paid by Kistler in December 2009 "when [FNB] never intended to perform its obligations and has refused to do so." (Doc. 1-11 ¶ 18.) In response to FDIC-R's motion, Plaintiffs contend that the conversion claim is proper because Kistler was "depriv[ed] of [his] interest in the line of credit." (Doc. 36 at 7.) Even assuming the D'Oench doctrine does not bar recovery to Plaintiffs' conversion claims, under Georgia law, there exists no genuine issue of material fact. Plaintiffs have alleged nothing more than that FNB failed to pay money due them under a contract. Such allegations do not form the basis of a conversion cause of action. See Decatur Auto, 276 Ga. at 821, 583 S.E.2d at 9. Plaintiffs have also claimed that FNB wrongfully converted funds drawn on the Kistler LOC and credited them toward the Cobalt Note. Plaintiffs have not demonstrated a genuine issue of material fact concerning how FNB's actions to declare a cross-default under the Kistler LOC constituted conversion.

Plaintiffs contend that Kistler had an "absolute and unconditional right to access the funds provided for under the [Kistler LOC]." (Id.) This absolute right, according to Plaintiffs, was harmed by the unlawful and wrongful conversion of the $25,000.00. (Id.) However, Plaintiffs are mistaken as to Kistler's rights under the Kistler LOC. The Kistler LOC clearly states that the conditions for future advances are "as requested by [Kistler] and approved by [FNB]." (Doc. 1-8 at 12.) Thus, Plaintiffs' rights to the Kistler LOC were not absolute or unconditional. As a result, Plaintiffs cannot show that there was ever any conversion by FNB with respect to Kistler's access to the Kistler LOC. See Gilbert, 181 Ga. App. at 460, 352 S.E.2d at 641. Accordingly, Plaintiffs' conversion claim as to Kistler's $25,000 payment to FNB must be dismissed.

### b.   Conversion of the Kistler LOC funds to Satisfy Cobalt Note Obligations

Plaintiffs also allege that FNB converted funds drawn on the Kistler LOC to satisfy obligations of the Cobalt Note. Specifically, Plaintiffs claim that when FNB wrongfully forced an advance on the Kistler LOC to satisfy the Cobalt Note, it prevented Kistler from exercising his contractual right to access the Kistler LOC funds. (Doc. 36 at 5-6.) Moreover, according to Plaintiffs, Kistler was

"unable to use the funds to which he was entitled to service the other debt obligations on which he and his companies subsequently defaulted." (Id. at 7.)

While the Superior Court of Chatham County found that the Kistler LOC could not be used as a set off for the Cobalt Note obligations (Doc. 1-16 at 20-21), FDIC-R ultimately restored the Kistler LOC and Cobalt Note to their original status. (Doc. 34 at 4 n.3.) Kistler argues that as a result of FNB's conversion, he was harmed because he could not use the Kistler LOC funds, which he purports to have had "an absolute and unconditional right [of] access." (Doc. 36 at 7.) As explained above, Kistler's rights to advances under the Kistler LOC were expressly conditioned on approval by FNB and not absolute or unconditional. Thus, even if FNB had not attempted to use the Kistler LOC against the Cobalt Note, any advance request from Kistler would require FNB approval. Because a conversion action requires an absolute and unconditional right, see Gilbert, 181 Ga. App. at 460, 352 S.E.2d at 641, and there was no such right here, Plaintiffs' conversion claim fails.

Additionally, Plaintiffs' assertion that FNB violated its contractual rights to monies owed Kistler is misplaced. The Georgia Supreme Court has held that a contractual right

17

to the payment of money is not capable of supporting a conversion claim.  See Decatur Auto, 276 Ga. at 821 n.8, 583 S.E.2d at 9 n.8.  As a result, Plaintiffs' conversion claim also fails.

## 2. Tortious Interference with Contractual and Business Relations

Plaintiffs have also asserted that "[FNB] h[as] tortuously interfered with [its] contracts (leases) and the business relationship between Plaintiffs and their tenants of the New South Building in Augusta, Georgia" by "directing the tenants to pay [FNB] rental monies" directly.  (Doc. 1-2 ¶¶ 26, 27.)  According to Plaintiffs, "[FNB] acted purposefully and with malice" by "compelling the tenants to re-direct all payments of rental monies to [FNB] as a result of an 'assignment of all rents due.' " (Id. ¶ 28.)  FDIC-R, in its motion for summary judgment, argues that FNB held an assignment of leases and rents and that as a matter of law, the Kistler LOC, the Security Agreement, and the assignment of rents were part of an integrated loan transaction.  (Doc. 34 at 25-26.)

To prevail on a claim of tortious interference with contract under Georgia law, a plaintiff must "establish the existence of a valid contract and that the defendant acted intentionally, without privilege or legal justification, to

induce another not to enter into or continue a business relationship with the plaintiff, thereby causing the plaintiff financial injury." Atlanta Mkt. Ctr. Mgmt. v. McLane, 269 Ga. 604, 608, 503 S.E.2d 278, 282 (1998) (citing Lake Tightsqueeze v. Chrysler First Finan. Servs., 210 Ga. App. 178, 181, 435 S.E.2d 486, 489 (1993)). Further, "in order to be liable for tortious interference, one must be a stranger to both the contract at issue and the business relationship giving rise to and underpinning the contract."[6] Id. at 609, 503 S.E.2d at 283. Critically, the "stranger doctrine" has been expanded to exclude not only third-party beneficiaries, but also to "those who benefit from the contract of others, without regarded to whether the beneficiary was intended by the contracting parties to be a third-party beneficiary." Id., 503 S.E.2d at 283 (citing Lake Tightsqueeze, 210 Ga. App. at 181, 435 S.E.2d at 489; Disaster Servs. v. ERC P'ship, 228 Ga. App. 739, 741, 492 S.E.2d 526, 529 (1997) (holding that one with a direct economic interest in a contract, even though not a third-party beneficiary, is not a stranger to the contract)).

---

[6] While Plaintiffs allege both tortious interference with contractual relations and business relations (Doc. 1-2 ¶¶ 25-31), the "stranger doctrine" is applicable to both. See Atlanta Mkt. Ctr. Mgmt., 269 Ga. at 609 n.2, 503 S.E.2d at 283 n.2.

19

It is the plaintiff who must show evidence of "improper action or wrongful conduct by the defendant without privilege." _Life Alarm Sys., Inc. v. Valued Relationships, Inc._, 2011 WL 1167174, at *5 (S.D. Ga. Mar. 28, 2011) (unpublished). Georgia courts have defined privilege as any "legitimate economic interests of the defendant or a legitimate relationship of the defendant to the contract, so that it is not considered a stranger, interloper, or meddler." _Disaster Servs._, 228 Ga. App. at 741, 492 S.E.2d at 329 (citations omitted).

At present, it is clear that FNB, through the Security Agreement, had a direct economic interest—an assignment of leases and rents. Plaintiffs incorrectly contend that because the leases "predated [the Kistler LOC], it cannot even be argued that the leases contemplated the existence of the FNB, much less a role of FNB in the business relationship between the tenants and Hutch Holdings." (Doc. 36 at 11.) _See BMC v. Ceebraid-Signal Corp._, 2007 WL 2126272, at *7 (N.D. Ga. July 23, 2007) (unpublished) ("The 'stranger doctrine' protects from liability more entities than just those who are parties to the agreement: '[o]ne is not a stranger to the contract just because one is not a party to the contract.' " (citation omitted)). Even construing the facts in the light most favorable to

Plaintiffs, they have not demonstrated that FNB was a meddler, interloper, or stranger to the contract or business relationship at issue. Id., 492 S.E.2d at 329. Thus, FNB cannot be considered a "stranger" for the purposes of Plaintiffs' tortious interference claims. As a result, summary judgment is proper because Plaintiffs have failed to demonstrate that there exists a genuine issue of material fact as to whether FNB was a "stranger" to Plaintiffs' contractual and business relationships.

### 3. Punitive Damages & Attorney's Fees

Plaintiffs also have requested punitive damages and attorney's fees. (Doc. 1-11 ¶¶ 33, 35.) In opposition to FDIC-R's motion for summary judgment, Plaintiffs argue that "this case presents unique procedural and factual distinctions that should preserve Plaintiffs' right to seek punitive damages." (Doc. 36 at 12.) Plaintiffs also seek attorney's fees. (Id. at 14.) Because the Court has dismissed all of Plaintiffs' substantive claims, any corollary request for punitive damages or attorney's fees must also be dismissed.[7]

---

[7] Even assuming that there were other remaining cognizable claims, federal law bars the FDIC from any liability for punitive damages. 12 U.S.C. § 1825(b)(3) provides that when the FDIC is acting as receiver, "[t]he [FDIC] shall not be liable for any amounts in the nature of penalties or fines." Further, the Eleventh Circuit has held that

## III. FDIC-R's Counterclaim

In its motion for summary judgment, FDIC-R has also moved for judgment "as to the indebtedness owed by [Kistler] under the terms of his line of credit with FNB" and also "under the terms of his personal guaranty of [the Cobalt Note] made by FNB." (Doc. 32 at 1-2.) FDIC-R's counterclaim alleges that the Cobalt Note matured by its terms, FNB made demand for payment, and Kistler failed to satisfy the amounts outstanding. (Doc. 1-12, Counterclaim ¶¶ 1-5.)

It is undisputed that FNB, through its attorneys, made demand on Kistler of all sums due under the Kistler LOC and Cobalt Note. (Doc. 33 ¶¶ 19, 21; Doc. 36-1 ¶¶ 19, 21.) Plaintiffs deny that they owe these sums because of "FNB's material breaches of the loan documents and improper calculations of interests and fees, which is inconsistent with Judge Morse's order."[8] (Doc. 36-1 ¶ 17.) Plaintiffs, however, are incorrect to assert that FNB's actions

---

punitive damages cannot be recovered from the United States or its agencies, such as the FDIC. See Smith v. Russellville Prod. Credit Ass'n, 777 F.2d 1544, 1549 (11th Cir. 1985).

[8] Curiously, while Plaintiffs rely heavily on the Superior Court's order to suggest that FNB's actions were improper as to the the Kistler LOC (see Doc. 36 at 11-14), Plaintiffs fail to address the fact that in the same order, the Superior Court found the Cobalt Note in default and allowed FNB to pursue collection accordingly (Doc. 1-13 at 10). Plaintiffs cannot have it both ways.

constituted a material breach, thereby obviating Plaintiffs' obligations to pay under the Kistler LOC and Cobalt Note. (Doc. 36 at 15.) Under Georgia law,

> where the purpose for which the money is to be used is not disclosed, to the lender, a recovery of damages would, of course, be limited to the difference between the amount of interest at a lawful rate upon the amount necessary to be procured elsewhere and the amount of interest at the lawful rate contracted for.

Albany Fed. Sav. & Loan Ass'n. v. Henderson, 198 Ga. 116, 140, 31 S.E.2d 20, 35 (1944) (citations omitted). Thus, the best that Plaintiffs could do is to recover nominal damages. However, nothing in Plaintiffs' allegations are sufficient to demonstrate that they would be entitled to nominal damages—the Kistler LOC was ultimately restored. Moreover, the terms of the Kistler LOC required approval for any advance by FNB.

Under Georgia law, "[a] creditor in possession of a valid and signed promissory note has a prima facie right to repayment, unless the debtor can establish a valid defense." Smith v. Gordon, 266 Ga. App. 814, 814, 598 S.E.2d 92, 93 (2004) (citation omitted). Moreover, once the record shows the " 'promissory note has been duly executed and is in default, prima facie right to judgment is established and [the] burden shifts to [the] debtor to establish [an] affirmative defense.' " Reece v. Chestatee

23

State Bank, 260 Ga. App. 136, 138, 579 S.E.2d 11, 14 (2003) (quoting Miller v. Calhoun/Johnson Co., 230 Ga. App. 648, 650, 497 S.E.2d 397, 399 (1998)).

Here, FDIC-R has met its burden of establishing Kistler's indebtedness. Plaintiffs have admitted to the execution and maturity of the Cobalt Note and also that a demand on Kistler was made for sums due. (Doc. 36-1 ¶¶ 16, 19, 21, 24.) Moreover, FDIC-R provided notice to Kistler of its intent to enforce the attorney's fees provisions of the Kistler LOC and Cobalt Note. (Doc. 33 ¶ 24.) FDIC-R has demonstrated, through the affidavit of Gary Ellis—Vice President servicing the FDIC's receivership for FNB—that Kistler has failed to make payments in accordance with the terms of the Kistler LOC and Cobalt Note, and are thus in default. (Doc. 33-1 ¶¶ 7, 22.) Plaintiffs have presented no evidence to rebut FNB's showing that Plaintiffs are in default. See Reece, 260 Ga. App. at 128, 579 S.E.2d at 14. Because Plaintiffs' claims pertaining to the Kistler LOC and Cobalt Note have been dismissed, there are no disputed material facts regarding Kistler's obligation for these debts. Accordingly, Kistler is liable under the terms of

the Kistler LOC and under the terms of his personal guaranty of the Cobalt Note.[9]

## CONCLUSION

For the foregoing reasons, FDIC-R's motion is **GRANTED**. Plaintiffs' claims against Defendant FDIC-R are **DISMISSED** and Counterclaimant FDIC-R is entitled to judgment as a matter of law. The Clerk of Court is **DIRECTED** to enter judgment in favor of Counterclaimant FDIC-R and against Counter Defendant Kistler individually in the amount of $785,200.25[10] and against Counter Defendants Kistler and Hutch Holdings jointly and severally in the amount of

---

[9] Pursuant to the terms of the Kistler LOC and the Cobalt Note, in addition to principal, FDIC-R is also entitled to interest, late fees, loan-related fees, and attorney's fees. Georgia law, O.C.G.A. § 13-1-11(a)(1)-(3), requires that attorney's fees provisions are enforceable where the conditions are "unquestionably satisfied." TermNet Merch. Servs., Inc. v. Phillips, 277 Ga. 342, 344-45, 588 S.E.2d 745, 747 (2003). An attorney's fee provision is enforceable under O.C.G.A. § 13-1-11 where "(1) the note's terms include an obligation to pay attorney fees; (2) the debt owed under the note has matured; (3) notice was given to the debtor informing him that if he pays the debt within ten days of the notice's receipt, he may avoid attorney fees; (4) the ten day period has expired without payment of the principal and interest in full; and (5) the debt is collected by or through an attorney." TermNet, 277 Ga. at 344, 588 S.E.2d at 747. All of these provisions are met here.
[10] This includes $476,449.20 in principal, $232,221.24 in interest, $3,875.24 in late fees, $1,250.00 in loan fees, and $71,404.57 in attorney's fees.

$1,767,226.31.[11]    Additionally, the Clerk of Court is **DIRECTED** to close both this and the consolidated case, CV411-25.

SO ORDERED this 23ᴿᴰ day of January 2013.

WILLIAM T. MOORE, JR
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[11] This includes $1,000,000.00 in principal, $532,087.98 in interest, $3,880.55 in late fees, $750.00 in loan fees, and $230,507.78 in attorney's fees.